CITY OF CLEVELAND, APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Cleveland *v.* Limbach (1988), 40 Ohio St. 3d 295.]

(No. 87-1871—Submitted November 15, 1988—Decided December 30, 1988.

*Marilyn G. Zack,* law director, *Craig S. Miller* and *David S. Hoffmann,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James S. Sauer,* for appellee.

*Per Curiam.* Under R.C. 5715.27, an application must be filed with the commissioner prior to December 31 of the tax year for which exemption is requested if the property is to be exempted from taxation. R.C. 5713.08 sets forth the commissioner's authority to exempt property and limits her authority to those instances in which taxes have been paid to the filing date or are remittable:

"(A) * * * The commissioner shall not consider an application for exemption of property unless the application has attached thereto a certificate executed by the county treasurer certifying that taxes, assessments, interest, and penalties levied and assessed against the property sought to be exempted have been paid in full to the date upon which the application for exemption is filed, except for such taxes and penalties .that may be remitted under division (B) of this section.

"(B) Unpaid taxes, interest, and penalties, which have become a lien after the property was first used for the exempt purpose, but in no case prior to the date of acquisition of the title to said property by applicant, may be remitted by the commissioner, except as is provided in section 5713.081 of the Revised Code [which limits the remission to one year of delinquent taxes]."

Under the statute, then, the commissioner may consider an exemption application only if the county treasurer certifies that the taxes have been paid to the date upon which the application is filed, except for taxes that may be remitted. Under division (B), the commissioner may remit unpaid taxes which have become a lien after the property was first used for the exempt purpose, but she may never remit unpaid taxes that have become a lien prior to when the applicant acquired title.

In the instant case, Cleveland argues that "unpaid taxes" are taxes that have not been paid after they have become due, which is no earlier than December 31 of each year, and become a lien when they are past due. The commissioner argues that "unpaid taxes" are any taxes that have not yet been paid, and that taxes for each year become a lien on the property on January 1 of that year under R.C. 323.11. Under Cleveland's view, the unpaid taxes here became a lien on December 31, 1982, after the exempt use began on January 27, 1982, and these unpaid taxes may be remitted. Under the commissioner's version, the unpaid taxes became a lien on January 1, 1982, before the exempt use began, and are unremittable. Since we agree with the commissioner, we affirm the board's decision.

Taxes are not required to be calculated until September in each year (R.C. 319.28), and they are not due until December 31 of that year (R.C. 323.12). Yet, under R.C. 323.11, they become a lien on the property on January 1 in each year:

"The lien of the state for taxes levied for all purposes on the real and public utility tax list and duplicate for each year shall attach to all property subject to such taxes on the first day of January, annually, * * * and continue until such taxes, including any penalties, interest, or other charges accruing thereon, are paid. * * *"

In *State, ex rel. Summit Cty. Bd. of Edn., v. Medina Cty. Bd. of Edn.* (1976), 45 Ohio St. 2d 210, 74 O.O. 2d 323, 343 N.E. 2d 110, this court held that the tax lien date, then provided by R.C. 5719.01, did not vest any right in a school district to receive tax revenues collected from a territory that was transferred to another district during the tax year. The court explained the single purpose of what is now R.C. 323.11 as being "* * * to guarantee the payment of taxes by those property owners upon whom a levy for taxes is made. The statute has no significance with regard to the actual levy of taxes, or the time when such taxes are levied." *Id.* at paragraph two of the syllabus.

Thus, the lien date relates to the payment of taxes. Logically, it also relates to the remission statute that forgives the payment of taxes. There is only one tax lien date annually. It aids the county in collecting taxes, and it also controls the situation when taxes are not collected.

Cleveland confuses delinquent taxes with unpaid taxes. All taxes are unpaid taxes until they are paid. They become a lien on January 1 regardless of whether they are calculated or due. Delinquent taxes, moreover, are unpaid taxes, but they are also taxes that have not been paid after the last day prescribed for payment of current taxes. R.C. 323.01(D) and (E). Thus, delinquent taxes are unpaid taxes that have not been paid by the date due. They are not, as Cleveland argues, the only "unpaid taxes" referred to in R.C. 5713.08.

In summary, under R.C. 5713.08, the commissioner may remit unpaid taxes that have become a lien after the property was first used for the exempt purpose only if the applicant acquires title before the tax lien date. If the unpaid taxes, which may include delinquent taxes, become a lien before then, the commissioner may not remit them. Consequently, she lacked jurisdiction to consider the instant exemption application.

Since the decision of the board is neither unreasonable nor unlawful, it is hereby affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

LOCHER, J., concurring. I reluctantly concur in today's decision. Under R.C. 5713.08 the proper result has been reached. However, it is my view that this is an absurd result and that the General Assembly should take steps to prevent such an absurd outcome from occurring in the future.

In this action, the taxpayer purchased the property a mere twenty-six days after the tax became a lien on the property. The property was then leased to the Ohio Department of Natural Resources to become a part of a state lakefront park. Undoubtedly, the property has been devoted to a public purpose since it was purchased. Despite these facts, the instant taxpayer is being required to pay property taxes for almost *the entire year* on property that would surely be found to be exempt from taxation.

As a political subdivision, the real taxpayers who are injured by this statute are the citizens of this political subdivision. Thus, the very citizens for

whom the recreational parks are being provided end up footing the bill for more taxes on property that is essentially exempt from state taxation. In the absence of any action by the General Assembly, citizens throughout this state will continue to be economically harmed on the simple basis of the date of purchase.

The law may dictate the result reached today. However, it is a result that is unfair and inequitable. Only the General Assembly possesses the power to correct such an absurdity and I strongly urge it to do so.

WRIGHT, J., concurs in the foregoing concurring opinion.