CITY OF TOLEDO ET AL., APPELLANTS, v. LEVIN, TAX COMMR., APPELLEE.

[Cite as *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119.]

(No. 2007–0938—Submitted November 29, 2007—Decided March 19, 2008.)

**Per Curiam.**

{¶ 1} On March 19, 2003, the city of Toledo filed an application for exemption with respect to parcel number 38–28469 in the Monclova Township/Anthony Wayne Local Schools taxing district in Lucas County, Ohio. The parcel consists only of the new buildings—not the land—at an already exempt site that is leased to the Ohio Air National Guard. The application does not state a specific theory of exemption for the buildings; instead, it generally cites R.C. Chapter 5709 and states that it seeks exemption for "new improvements" that "were made to the Air National Guard Building in 1994 and picked up for taxes in the year 1994." The application on its face seeks exemption for 2002 and requests remission of taxes and penalties for 1994 through 2001.

{¶ 2} The parcel owned by Toledo upon which the new buildings are situated constitutes part of the Toledo Express Airport. The property has been leased for many years to the United States, which in turn grants use of the tract to the Ohio Air National Guard. In 1994, the Ohio Air National Guard constructed the new buildings at the site. Under the current arrangement, the city as owner leases the property to the Toledo–Lucas County Port Authority, which then subleases it to the federal government.

{¶ 3} The county auditor became aware of the new construction on the property during the 1994 reappraisal of properties in the county. He listed it under a separate parcel from the land until exemption could be sought and obtained. Neither Toledo nor Lucas County ever sought to exempt the 1994 construction until the 2003 application for exemption that is the subject of this case.

{¶ 4} Toledo advanced as a principal argument before the Tax Commissioner that the new construction constituted property owned by the federal government as lessee. The Tax Commissioner found that (1) the parcel at issue was created

as a temporary parcel in 1994 to distinguish the new buildings from "exempt land and structures situated on the same city property," (2) in spite of the creation of the new parcel for the new buildings, there was no transfer of title to the federal government, and (3) as a result, the city continued to be the owner of record of the buildings, as well as the owner of the land underneath. The Tax Commissioner rejected the claim of intergovernmental tax immunity for the new buildings because he determined that splitting the ownership of land and buildings was not legally possible under these circumstances. But the Tax Commissioner drew a separate and more favorable conclusion for the applicant: the property qualified for exemption under R.C. 5709.08 because (1) it constituted "public property," inasmuch as the city of Toledo owned it, and (2) it was leased for use by the Air National Guard, which used the property for a "public purpose." See *Dayton v. Haines* (1959), 169 Ohio St. 191, 8 O.O.2d 159, 158 N.E.2d 201 (city property leased to federal government and used by the latter for public purposes is exempt).

{¶ 5} Procedurally, although the application on its face requested exemption for the 2002 tax year, the Tax Commissioner treated the application as pertaining to the 2003 tax year.[1] Because the ownership and exempt use had been continuous since 1994, the Tax Commissioner granted remission of taxes for the three prior years pursuant to R.C. 5713.08(B) and 5713.081; thus, Toledo obtained tax relief back to 2000.

{¶ 6} Because Toledo had sought remission all the way back to 1994, it appealed to the Board of Tax Appeals ("BTA").

{¶ 7} At the BTA hearing, testimony of three witnesses revealed a sequence of events by which the real property taxes were billed and paid with respect to the improvements. The Toledo–Lucas County Port Authority leased the property to the federal government for use by the Ohio Air National Guard; it also leased another parcel to a private entity. The private entity had constructed improvements on its parcel of nearly the same value as the National Guard improvements, but the private entity received its own tax bill. The bills relating to the National Guard improvements went to the Port Authority. Upon receiving the tax bills that related to the National Guard improvements, the Port Authority mistook them for bills that related to the private entity's improvements and forwarded them to the private entity for payment. The private entity then paid two bills: the bill it received that actually pertained to improvements on the parcel it leased, and the bill it received through the Port Authority that pertained

---

1. Neither the BTA nor the parties have offered any commentary on the Tax Commissioner's authority to treat an application as one for the year in which it is filed, even though on its face the application seeks exemption for the prior tax year. Apparently, the BTA assumed the Tax Commissioner had that authority, and so do we.

to the Air. National Guard improvements. This procedure continued from 1994 through 2002 or 2003, until the private entity discovered it had been paying tax each year for improvements that belonged to the National Guard, in addition to paying the tax on its own property. It was only after this discovery that Toledo finally applied to exempt the property in March 2003.

{¶ 8} On April 20, 2007, the BTA issued its decision. The BTA found that the Tax Commissioner had not possessed jurisdiction to consider the application and ordered that the case be dismissed for want of jurisdiction. Because the application on its face sought exemption for tax year 2002, the application was untimely under R.C. 5715.27(F) because it was filed after December 31, 2002. *Toledo v. McAndrew* (Apr. 20, 2007), B.T.A. No. 2004–B–183, at 5. The Tax Commissioner's decision to treat the application as one for 2003 did not save the application; if the application was viewed as pertaining to 2003, then the county treasurer's certification was not adequate, because it did not indicate that taxes and assessments had been paid to the time of the application. See R.C. 5713.08(A). Specifically, the county treasurer had certified payment though tax year 2001, and the BTA held that "[f]or the Tax Commissioner to consider the merits of the application for the tax year 2003, appellants would have had to attach the treasurer's certificate corresponding to tax year 2002 rather than tax year 2001." Id. at 7.

{¶ 9} Toledo appealed, and we now reverse.

I

{¶ 10} Toledo first argues that R.C. 5715.27(F) is ambiguous, and it proposes a clarifying construction that it contends resolves the ambiguity. R.C. 5715.27(F) states:

{¶ 11} "An application for exemption and a complaint against exemption shall be filed prior to the thirty-first day of December of the tax year for which exemption is requested or for which the liability of the property to taxation in that year is requested."

{¶ 12} Toledo avers that "tax year" is ambiguous because it could mean one of two things: the year in which the property tax is levied and assessed, or a subsequent year in which the tax actually becomes due and is collected. For each year, real property tax becomes a lien on the property on January 1, and the auditor determines value and certifies the tax duplicate as of October 1, which permits calculation of the tax. R.C. 323.11 (tax lien); R.C. 319.28 (county auditor calculates value and certifies duplicate to county treasurer); *Cleveland v. Limbach* (1988), 40 Ohio St.3d 295, 296–297, 533 N.E.2d 336. Toledo refers to that year as the "assessment year," and contrasts it to the "collection year," which is the time when the tax is usually paid. See R.C. 323.12.

{¶ 13} Applying its theory, Toledo points out that 2003 was the "collection year" for the "assessment year" 2002, the year for which it sought exemption. If "tax year" in R.C. 5715.27(F) means "collection year," then the deadline for its application was December 31, 2003, rather than December 31, 2002. As a result, its March 2003 application was timely.

{¶ 14} We reject this argument because we find no ambiguity in the statute's use of the term "tax year," and we conclude that the term refers to what Toledo calls the "assessment year," not the "collection year." This conclusion arises from our reading of the statutes and the case law, which establish that, both in the context of exemption proceedings and valuation proceedings, "tax year" refers to the year as to which real property is valued and in which the tax is levied and assessed. It follows that the term "tax year" does not refer to a subsequent year in which the tax may actually be collected.

{¶ 15} First, the basic logic of R.C. 5715.27 dictates our conclusion. The very essence of "exempting" property from taxation lies in relieving it from the levy and assessment of tax, not in forestalling the collection of taxes that have previously been levied. Consistent with this logic is the definition of "tax-exempt" as "[b]y law not subject to taxation." Black's Law Dictionary (8th Ed.2004) 1501. When R.C. 5715.27(A) speaks of an owner "requesting that such property be exempted from taxation," the request is that the property be "not subject to taxation," not that the owner be freed from the obligation to pay the tax that accrued in the prior year. Thus, the requirement in R.C. 5715.27(F) that the application be filed by December 31 "of the tax year for which exemption is requested" means that the application must be filed by the end of the year as to which the tax would be levied and assessed.

{¶ 16} This logic is even more clearly illustrated by the portion of R.C. 5715.27(F) that uses the term "tax year" in connection with a complaint that seeks to terminate the exempt status of another's property. Complaints against exemption are subject to the same time limitation as applications for exemption: under R.C. 5715.27(F), such a complaint must be filed "prior to the thirty-first day of December of the tax year * * * for which the liability of the property to taxation in that year is requested." This language plainly couples "tax year" with the year in which the property at issue becomes "liable to taxation," that is, the year in which the tax ought to be levied and assessed, not a later year in which that tax might be collected. This construction of the plain language then accounts for the result we reached in *Olmsted Falls Bd. of Edn. v. Tracy* (1996), 76 Ohio St.3d 386, 667 N.E.2d 1200, where we held that a complaint against exemption filed in "tax year" 1992 did not jurisdictionally raise a challenge to the exempt status of the property for "tax years" 1989, 1990, and 1991.

{¶ 17} Our conclusion as to the proper meaning of "tax year" as used in R.C. 5715.27 is confirmed when we examine the use of that same term in connection with complaints that challenge the valuation of property. R.C. 5715.19 authorizes such complaints and provides that they must be filed "on or before the thirty-first day of March of the ensuing tax year or the date of closing of the collection for the first half of real and public utility property taxes for the current tax year, whichever is later." The phrase "ensuing tax year" plainly establishes the meaning of "tax year." The passage permits the filing of complaints up to March 31 of the year that comes *immediately after* the year as to which the tax has been levied and assessed; it does not contemplate, as Toledo's theory suggests, that the party contesting value may wait a whole additional year to file its complaint. The very fact that an alternative deadline is tied to the schedule for collection of the tax verifies this reading of "tax year."

{¶ 18} Finally, our construction of "tax year" is borne out by the BTA's consistent application of this deadline for filing valuation complaints; in both of the following BTA cases, the BTA found that jurisdiction did not exist, based upon the "tax year" constituting the year when the value was determined—what Toledo calls the "assessment year" as opposed to the "collection year." See *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (Apr. 8, 1994), B.T.A. Nos. 1993–K–1088 and 1993–K–1089 (complaint filed in March 1992 found to be untimely to contest value as assessed for 1990); *Bill v. Ottawa Cty. Bd. of Revision* (Nov. 5, 2004), B.T.A. No. 2004–A–920 (holding that "a complaint contesting a property's valuation for tax years 1988–1994 would have had to have been filed by March 31 of the year following the tax year in question, i.e. March 31, 1989 through March 31, 1995").

{¶ 19} For the foregoing reasons, we hold that "tax year" in R.C. 5715.27(F) refers to the year in which the real property tax is levied and assessed, not a later year in which the tax is actually collected. To the extent that Toledo's application for exemption sought exempt status for 2002, that application had to be filed by December 31, 2002, to comply with the statute. Since it was not filed until March 2003, the application was untimely as to the 2002 tax year. Therefore, the BTA acted reasonably and lawfully when it held that the Tax Commissioner had no authority to consider the application as one seeking exemption for 2002.

## II

{¶ 20} As noted, the Tax Commissioner treated the exemption application not as one for tax year 2002, but as one for tax year 2003. Because this was the theory of the Tax Commissioner's final determination, the BTA addressed the viability of the application as a 2003 application and found that the county

treasurer's certification was not sufficient to create jurisdiction for a 2003 application.

{¶ 21} In appealing this aspect of the BTA's decision, Toledo places primary reliance on its argument that the application was timely when viewed as an application for the 2002 tax year. Toledo argues that the treasurer's certification is sufficient to invoke jurisdiction for a 2002 application. Since we have rejected Toledo's contention that the application may be entertained as one that pertains to tax year 2002, Toledo's argument that the treasurer's certification is sufficient as to tax year 2002 is moot.

## III

{¶ 22} Toledo contends, in arguing that the county treasurer's certification was sufficient for the 2003 tax year, that the certification "identified no unpaid taxes or assessments for any tax year." The application thus "made it clear" that "no taxes for the subject Parcel were unpaid." Toledo argues that, in contrast to decisions of this court that ordered dismissal where the certification showed unpaid taxes, its own application was "not defective" because it "does not show that there were unpaid taxes at the point of filing as was true in the cases cited by the Board." According to Toledo, the county treasurer's certification in this case satisfied "the core requirement—that all taxes be paid when the application was filed" because it identified no taxes (or assessments) as remaining unpaid.[2]

{¶ 23} Quite simply, this argument sets up a conflict between two portions of the form of certification that the Tax Commissioner prescribes for county treasurers. The first portion of the form requires the county treasurer to certify that taxes, assessments, interest, and penalties "have been paid in full to and including the full tax year _____." In this case, the county treasurer filled in the blank with "2001."

{¶ 24} The BTA emphasizes this first portion of the certification. The BTA held that, because the treasurer had certified payment of taxes, assessments, interest, and penalties only through tax year 2001, the certification failed to create jurisdiction for an application that pertained to tax year 2003. In order to

---

2. It is important to reiterate that the Tax Commissioner, after granting exemption for the 2003 year, remitted taxes back to 2000. That is consistent with the theory presented on the face of the application that the exempt use was in place from 1994 through the filing of the application. Taxes that may be remitted need not be certified as having been paid. R.C. 5713.08(A)(1). As a result, the certification that all *taxes* were paid through tax year 2001 suffices to create jurisdiction as far as *taxes* are concerned, because any taxes levied and assessed after 2001 were subject to remission. Indeed, the record shows that taxes were paid through the first half of 2002, but that payment was not a jurisdictional prerequisite. By contrast, special assessments are not subject to remission under R.C. 5713.08(B). See *Cleveland Clinic Found. v. Wilkins*, 103 Ohio St.3d 382, 2004-Ohio-5468, 816 N.E.2d 224, ¶ 12–13. As a result, the certification could only be deficient with respect to special assessments.

create jurisdiction for a 2003 application, the BTA opined, the treasurer must certify all amounts paid though tax year 2002.

{¶ 25} Toledo's argument focuses on the second portion of the certification form. That portion requires the county treasurer to identify "the only unpaid taxes, special assessments, penalties and interest which are a lien and unpaid" on the property, as of the date of the certification. In this case, Toledo filed the application with the county auditor on March 19, 2003, and the county treasurer certified the payment of taxes and assessments as of March 26, 2003. In the second portion of the form, the treasurer affirmatively indicated that there were no unpaid taxes or assessments. Toledo contends that this satisfies the mandate of R.C. 5713.08(A)(1) that the treasurer certify "[t]hat all taxes, assessments, interest, and penalties levied and assessed against the property sought to be exempted have been paid in full to the date upon which the application for exemption is filed," even though the first part of the form certifies payments only through tax year 2001 rather than tax year 2002.

{¶ 26} We agree with Toledo's emphasis on the second portion of the certification, and we find that Toledo's argument points to a legal error committed by the BTA.[3] Affirming the BTA's holding would require two inferences that we decline to draw. First, the BTA inferred from the statement that all taxes, assessments, interest, and penalties have been paid through a certain tax year that some portion of those items has *not* been paid with respect to later years. If this statement stood as the only one in the certification, we might find it appropriate to predicate a dismissal for lack of jurisdiction upon drawing that kind of inference. But the certification form's additional requirement that the county treasurer identify unpaid taxes and assessments makes an inference of nonpayment completely unjustified when, as in this case, the treasurer does not identify any taxes or assessments as being unpaid.

{¶ 27} Second, the BTA inferred that, when the county treasurer drew lines through the spaces where he would otherwise indicate unpaid taxes and assessments, he did not mean to certify that all payments had been made up to the date on which he executed the certification—March 26, 2003. Instead, the BTA must have concluded that the treasurer meant only that there were no unpaid taxes or assessments as of some earlier date; most probably, the BTA construed the

---

3. Although the court "will defer to factual determinations of the BTA if the record contains reliable and probative support for them," the court "will reverse a decision of the BTA that is based on an incorrect legal conclusion." *Strongsville Bd. of Edn. v. Wilkins,* 108 Ohio St.3d 115, 2006-Ohio-248, 841 N.E.2d 303, ¶ 7. The issue before us is the jurisdictional sufficiency of the county treasurer's certification, and that issue presents a question of law. As a result, we review the BTA's determination without deference. We also conclude that, in determining the legal issue before us, it is unnecessary to address the parties' dispute as to whether a "strict compliance" or a "substantial compliance" standard applies to the treasurer's certification.

second portion of the form in light of the first and concluded that the treasurer only meant to indicate that there were no unpaid items as of the end of tax year 2001.

{¶ 28} We find the second inference as unjustified as the first. On its face, the certification purports to state that there were no unpaid taxes or assessments, as of March 26, 2003, that had become a lien and that remained unpaid. We presume that a public official means what he says and that he is duly performing the function that the law calls upon him to perform. See *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 113 N.E.2d 14 ("in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner"); *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E.2d 132, paragraph seven of the syllabus ("The action of an administrative officer or board within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment"). If the treasurer meant something different from what he said, we would expect that he would say so.

{¶ 29} Our holding in this regard is fully consistent with the cases on which the BTA relied. In *Cleveland Clinic Found. v. Wilkins*, 103 Ohio St.3d 382, 2004-Ohio-5468, 816 N.E.2d 224, ¶ 15, we held that the treasurer's certification must show that all assessments, interest, and penalties have been "paid in full to the date upon which the application for exemption is filed." We ordered dismissal of the application for exemption because, in that case, "[t]he treasurer's certificate attached to the application stated that there were taxes, special assessments, penalties, and interest unpaid for tax year 1997." Id. at ¶ 2. Likewise, in *Strongsville Bd. of Edn. v. Wilkins*, 108 Ohio St.3d 115, 2006-Ohio-248, 841 N.E.2d 303, we affirmed dismissal of the application, but did so in a case where the certificate executed by the county treasurer indicated that when the owner filed the application it still owed taxes from a prior tax year. In other words, in both *Cleveland Clinic* and *Strongsville*, the treasurer's certificate affirmatively showed unpaid tax or assessment amounts. By contrast, the certificate in this case affirmatively indicates no unpaid amounts. As a result, the certification sufficed to invoke the Tax Commissioner's jurisdiction to consider the exemption application on its merits.

## IV

{¶ 30} Because the BTA erred by determining that the Tax Commissioner had no jurisdiction to consider Toledo's application for exemption as an application for

the 2003 tax year, we reverse the BTA's decision and remand for the BTA to consider Toledo's appeal on the merits.

Decision reversed
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

Spengler Nathanson P.L.L., Michael W. Bragg, and Teresa L. Grigsby, for appellant Toledo–Lucas County Port Authority.

John T. Madigan, Toledo Law Director, and Paul F. Syring, for appellant city of Toledo.

John I. Mattimoe, for appellant Lucas County Auditor.

Marc Dann, Attorney General, and Damion M. Clifford, Assistant Attorney General, for appellee.