[Cite as *Westerville City Schools Bd. of Edn v. Harris*, 2025-Ohio-4559.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Westerville City Schools Board of Education,    :

        Appellant,    :

                            No. 24AP-768

v.    :    (BTA No. 2022-1259)

Patricia Harris, Tax Commissioner    :    (REGULAR CALENDAR)
of Ohio et al.,

        Appellees.    :

---

D E C I S I O N

Rendered on September 30, 2025

---

**On brief:** *Rich & Gillis Law Group LLC*, *Mark Gillis*, and *Richelle Thoburn Ford*, for appellant.

**On brief:** *Dave Yost*, Attorney General, and *Christine Mesirow*, for appellee Patrica Harris, Tax Commissioner of Ohio.

**On brief:** *Bluestone Law Group LLC*, *Charles L. Bluestone*, and *Andrew J. Merwine*, for appellee The HTH Partners LLC.

APPEAL from the Ohio Board of Tax Appeals

BOGGS, J.

{¶ 1} Appellant, Westerville City Schools Board of Education ("BOE"), appeals a decision and order of the Ohio Board of Tax Appeals ("BTA"), which affirmed the final determination of appellee, Patricia Harris, Tax Commissioner of Ohio, ("Tax Commissioner"), ordering remission to appellee, The HTH Partners, LLC ("HTH"), of taxes, interest, and penalties for tax years 2016 and 2017 with respect to property owned by HTH. For the following reasons, we affirm the BTA's decision.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   HTH is an Ohio limited liability company that, at all relevant times, owned real property identified as Franklin County parcel 110-002429-00, located at 4664 Cleveland Avenue in Columbus ("the property").   The property contains a single-story building of approximately 5,484 square feet.   Beginning in 2010, HTH leased the building to Vineyard Columbus, a trade name of Vineyard Christian Fellowship of Columbus, a religious organization whose purpose was to establish and maintain a church for promotion and instruction in Christian doctrine.

{¶ 3}   On December 30, 2019, HTH filed an Application for Real Property Tax Exemption and Remission.   HTH sought a partial exemption from taxation under R.C. 5709.07, which applies to a house of public worship, or R.C. 5709.12, which applies to charitable use of property.   HTH stated that Vineyard Columbus incubated a start-up church known as Vineyard North Columbus, whose congregants met and held worship services in the 3,000 square-foot western portion of the building, which consisted of a large open space, two bathrooms, an office, and three meeting rooms.   It stated that, from May 12, 2013 to July 16, 2017, public worship services were regularly held in the western portion of the building and that other religious programming was periodically held there. In mid-July 2017, Vineyard North Columbus moved into its own nearby building but continued to use the western portion of the building for weekly bible study.   The eastern portion of the building contains an open space, a kitchen, and storage space.   HTH claimed the entire western portion of the building and 732 square feet of the eastern portion of the building, representing the open space and the kitchen, were entitled to be placed on the tax-exempt rolls pursuant to R.C. 5709.07. Alternatively, HTH claimed, if the Tax Commissioner determined that R.C. 5709.12 applies, then the entire building should be

placed on the tax-exempt rolls. HTH sought exemption for tax year 2019 and remission of taxes, interest, and penalties for tax years 2016, 2017, and 2018.

{¶ 4} The BOE filed an objection to HTH's application.

{¶ 5} On June 14, 2022, the Tax Commissioner issued a final determination on HTH's application. The Tax Commissioner first considered HTH's request pursuant to R.C. 5709.07(A)(2), which exempts from taxation "[h]ouses used exclusively for public worship, the books and furniture in them, and the ground attached to them that is not leased or otherwise used with a view to profit and that is necessary for their proper occupancy, use, and enjoyment." Because HTH, a for-profit limited liability company, leased the property to Vineyard Columbus with a view to profit, the Tax Commissioner determined that the land itself remained taxable. Nevertheless, the Tax Commissioner found that the 3,000 square-foot western portion of the building was used for public worship for tax years 2016 and 2017 and was thus subject to remission for those years. The Tax Commissioner next considered HTH's request for exemption under R.C. 5709.12(B), which exempts from taxation "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes." The Tax Commissioner found R.C. 5709.12(B) inapplicable because HTH is a for-profit company, not a charitable, public, or educational institution. Ultimately, the Tax Commissioner granted HTH's application in part and ordered remission of taxes, penalties, and interest related to the 3000 square-foot western portion of the building for tax years 2016 and 2017. Otherwise, the Tax Commissioner denied HTH's application.

{¶ 6} The BOE appealed the Tax Commissioner's determination to the BTA, challenging the grant of remission for tax years 2016 and 2017. In its merit brief before the BTA, the BOE acknowledged, "This case involves one legal issue: Could the Commissioner

. . . grant exemption for tax years 2016 and 2017 when he found that the Subject Property did not qualify for exemption for tax year 2019, the year for which the application was filed?" (Appellant's Brief at 6.) The BOE argued that the answer to that question is "no" and that the Tax Commissioner erred by granting HTH's request for remission for tax years 2016 and 2017 because the property did not first qualify for exemption in tax year 2019. The BTA rejected the BOE's position, stating that the Tax Commissioner had discretion to consider tax years 2016 through 2019. It held that neither R.C. 5715.27 nor 5713.081, the statutes cited by the BOE, requires an applicant to prevail with respect to exemption for the application year as a condition precedent to the Tax Commissioner's authority to look back to the previous three years for potential remission. The BTA stated, R.C. 5713.081 places only one prohibition on the Tax Commissioner's authority to grant remission—that she may not remit more than three years. Having rejected the BOE's argument, the BTA affirmed the Tax Commissioner's final determination.

{¶ 7} The BOE has appealed the BTA's decision to this court, raising six assignments of error:

1. The Decision is unreasonable and unlawful because it affirmed the Tax Commissioner's decision to grant real property tax exemption to 3,000 SF of the western portion of the Subject Property for tax years 2016 and 2017 when the Tax Commissioner held that the Subject Property was not entitled to exemption for the tax year in which the application for exemption was filed.

2. The Decision is unreasonable and unlawful when it affirmed the Tax Commissioner's decision to grant real property tax exemption to the 3,000 SF of the western portion of the Subject Property for tax years 2106 and 2017 when the application for exemption was untimely for those years.

3. The Decision is unreasonable and unlawful because it affirmed the Commissioner's finding that the property

owner met its burden in establishing that it was entitled to exemption for the 3,000 SF of the western portion of the Subject Property for tax years 2016 and 2017.

4. The Decision is unreasonable and unlawful because it failed to read tax statutes, including R.C. 5713.08, 5713.081, and 5715.27 in pari materia.

5. The Decision is unreasonable and unlawful because it fails to consider the plain language of R.C. 5713.08.

6. The Decision is unreasonable and unlawful because it improperly considered evidence for a tax year (2019) for which it did not have jurisdiction.

(Appellant's Brief at v.)

## II.  ANALYSIS

### A.  Standard of review

{¶ 8}   When we review a decision by the BTA, our task is to determine whether the BTA's decision is reasonable and lawful.  R.C. 5717.04.  If it is both, we must affirm it.  *Id.* If the BTA's decision is unreasonable or unlawful, however, the court "shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification."  *Id.*  In our review, "[w]e defer to the BTA's factual findings as long as they are supported by reliable and probative evidence in the record."  *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2022-Ohio-355, ¶ 16 (10th Dist.).  As to questions of law, we engage in plenary review without deferring to the BTA's or the Tax Commissioner's legal conclusions.  *Id.*; *Stingray Pressure Pumping, L.L.C. v. Harris*, 2023-Ohio-2598, ¶ 18.  We "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion."  *Biskind v. Harris*, 2024-Ohio-5067, ¶ 10 (10th Dist.), citing *Bd. of Edn. of the Westerville City Schools v. Franklin Cty. Bd. of Revision*, 2016-Ohio-1506, ¶ 21.

{¶ 9} Here, the BOE challenges only the BTA's legal conclusions, particularly concerning the meaning and applicability of R.C. 5715.27, 5713.08, and 5713.081. A dispute over the meaning of a statute presents a question of law subject to de novo review. *Progressive Plastics, Inc. v. Testa*, 2012-Ohio-4759, ¶ 15.

{¶ 10} Our primary goal when analyzing a statute is to apply the General Assembly's intent, as manifested in the words of the statute. *Proctor v. Kardassilaris*, 2007-Ohio-4838, ¶ 12, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995). To discern legislative intent, we "consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South-Western City Schools v. Anthony*, 2005-Ohio-5362, ¶ 40. We consider the statute as a whole and may not pick out one sentence and disassociate it from the context. *Elec. Classroom of Tomorrow v. Ohio Dept. of Edn.*, 2018-Ohio-3126, ¶ 11, citing *State v. Wilson*, 77 Ohio St.3d 334, 336, 1997-Ohio-35. We endeavor to " 'give effect to every word and clause in [the statute]. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.' " *Boley v. Goodyear Tire & Rubber Co.*, 2010-Ohio-2550, ¶ 21, quoting *State ex rel. Myers v. Bd. of Edn. of Rural School Dist. of Spencer Twp., Lucas County*, 95 Ohio St. 367, 373 (1917).

{¶ 11} If the meaning of a statute is unambiguous and definite, we must apply it as written and undertake no further interpretation. *Elec. Classroom of Tomorrow* at ¶ 11, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 1996-Ohio-291. We may not use canons of statutory interpretation to create ambiguity that does not exist in the plain language itself. *Cleveland v. State*, 2019-Ohio-3820, ¶ 17, citing *State v. Krutz*, 28 Ohio St.3d 36, 37 (1986), and *Ali v. Fed. Bur. of Prisons*, 552 U.S.

214, 227 (2008). "Doing so would be inconsistent with 'the well-established rule that the plain language of the enacted text is the best indicator of intent.' " *Id.*, quoting *Nixon v. United States*, 506 U.S. 224, 232 (1993). The Supreme Court of Ohio has instructed courts in this state to "apply the same rules of construction to tax statutes that we apply to all other statutes." *Stingray Pressure Pumping* at ¶ 22.

## B. The BOE's arguments

{¶ 12} The BOE addresses its first three assignments of error together. It argues the BTA's decision is unreasonable and unlawful because the Tax Commissioner lacked authority to grant remission for tax years 2016 and 2017 when the property did not qualify for exemption in tax year 2019 and because HTH did not file a timely application for exemption for tax years 2016 and 2017. The BOE maintains, "[t]he property at issue had to qualify for exemption in the year the application was filed in order to be exempted from taxation for any prior tax years." (Appellant's Brief at 8.) It argues that, because the property did not qualify for exemption in tax year 2019, consideration of remission for the three prior tax years essentially constitutes consideration of an untimely application for exemption. Further, it argues that the Tax Commissioner's authorization to separately determine exempt status for the application year and entitlement to remission for prior years exists only as provided in R.C. 5715.27(H).

{¶ 13} In its consolidated argument regarding its fourth and fifth assignments of error, the BOE argues that the BTA did not read the relevant exemption and remission statutes in pari materia and that its interpretation of those statutes creates conflicts between the statutes, rendering the filing deadline in R.C. 5715.27(F) and the exception in R.C. 5715.27(H) meaningless.

{¶ 14} Finally, under its sixth assignment of error, the BOE argues that the BTA's decision is unreasonable and unlawful because the BTA improperly considered evidence for a tax year over which it did not have jurisdiction.

### C. Relevant statutes

{¶ 15} Before turning to the BOE's specific arguments, we begin with a review of the statutes governing applications for tax exemption and authorizing the Tax Commissioner to order remission of taxes, interest, and penalties. First, R.C. 5715.27 generally establishes the procedure for filing an application for property tax exemption. With certain exceptions not applicable here, the owner of property may file an application with the Tax Commissioner requesting that such property be exempt from taxation and that taxes, interest, and penalties be remitted as provided in R.C. 5713.08. R.C. 5715.27(A). R.C. 5715.27(F) limits the time in which an owner may file an application for exemption. It states:

> An application for exemption . . . shall be filed prior to the thirty-first day of December of the tax year for which exemption is requested[.] The commissioner . . . shall consider such application . . . in accordance with procedures established by the commissioner, determine whether the property is subject to taxation or exempt therefrom, and . . . certify the determination to the auditor.

*Id.*

{¶ 16} As stated in R.C. 5715.27(A), an application for exemption may include a request that taxes, interest, and penalties be remitted as provided in R.C. 5713.08(C), which states, "[a]ny taxes, interest, and penalties which have become a lien after the property was first used for the exempt purpose . . . may be remitted by the commissioner . . . except as provided in" R.C. 5713.081(A). R.C. 5713.081(A) imposes a single limitation on the commissioner's authority to remit taxes, interest, and penalties: "No application for real

property tax exemption and tax remission shall be filed with, or considered by, the tax commissioner . . . in which tax remission is requested for more than three tax years, and *the commissioner . . . shall not remit more than three years' taxes, penalties, and interest*." (Emphasis added.)

{¶ 17} The BOE also directs this court to R.C. 5715.27(H), which it contends states the sole circumstance in which the Tax Commissioner may make separate determinations whether a property is exempt for the year in which the application is filed and whether remission is warranted for any previous year. R.C. 5715.27(H) states:

> If the commissioner . . . determines that the use of property or other facts relevant to the taxability of property that is the subject of an application for exemption . . . under this section has changed while the application . . . was pending, the commissioner . . . may make the determination under division (F) of this section separately for each tax year beginning with the year in which the application . . . was filed or the year for which remission of taxes under division (C) of section 5713.08 of the Revised Code was requested, and including each subsequent tax year during which the application . . . is pending before the commissioner[.]

The parties agree that R.C. 5715.27(H) does not apply to the facts of this case.

## D. Assignments of error one, two, and three

{¶ 18} The thrust of the BOE's first three assignments of error is that the Tax Commissioner's authority to remit taxes, penalties, and interest under R.C. 5713.08 and 5713.081 is conditioned upon the Tax Commissioner first determining that the property is exempt for the application year. In other words, the BOE maintains that any exempt use during one of the lookback years must continue through the application year to authorize remission. Like the BTA, we disagree with the BOE's position.

{¶ 19} R.C. 5715.27(F) requires an application for exemption be filed prior to December 31 of the tax year for which the applicant requests exemption. HTH timely filed

its application for exemption on December 29, 2019, for tax year 2019. HTH stated it had leased the property to Vineyard Columbus continually since October 1, 2010. HTH acknowledged that regular worship services were no longer held on the property after July 2017, but it stated that Vineyard North Church continued to hold weekly bible study meetings in the western portion of the building, that the open area in the eastern portion of the building holds items used in connection with church services and bible study programs and that the kitchen in the eastern portion of the building is used by the church to prepare refreshments for participants in church services and bible study programs. At a hearing before the BTA, HTH presented testimony from two pastors, who testified that the church intended to maintain the property for the purpose of fostering another congregation and that Vineyard Columbus continued to hold religious and educational activities on the property through the onset of the COVID-19 pandemic.

{¶ 20} Pursuant to R.C. 5715.27(A), HTH's timely application for exemption for tax year 2019 included a request that taxes, interest, and penalties be remitted for tax years 2016, 2017, and 2018, as provided in R.C. 5713.08. Under R.C. 5713.08, the Tax Commissioner may order remission of any taxes, interest, and penalties which have become a lien after the property was first used for the exempt purpose, except as provided by R.C. 5713.081(A), which limits remission to three years. The BOE acknowledges, "In addition to determining the property's exempt status for the year in which the application was filed, the Tax Commissioner is authorized to grant remission of taxes, penalties and interest for prior tax years pursuant to R.C. 5713.08 and R.C. 5713.081." (Appellant's Brief at 6.)

{¶ 21} The BOE contends that the Tax Commissioner's authority to remit taxes, penalties, and interest under R.C. 5713.08 and 5713.081, however, is conditioned upon the Tax Commissioner first determining that exemption is warranted for the application year.

But the plain and unambiguous language of R.C. 5715.27, 5713.08, and 5713.081 includes no such condition. Under R.C. 5715.27(F), the Tax Commissioner must "determine whether the property is subject to taxation or exempt therefrom." Separately, R.C. 5713.08(C) grants the Tax Commissioner authority, as part of its determination of an application for tax exemption, to remit "any taxes, interest, and penalties which have become a lien after the property was first used for the exempt purpose." Nothing in R.C. 5713.08(C) conditions that authority on the Tax Commissioner having first determined that the property is exempt for the application year. And contrary to the BOE's suggestion, the Tax Commissioner's determination that the property was not entitled to exemption for tax year 2019 did not transform HTH's application into "an untimely filed application for tax years 2016 and 2017," when the statutes permit a request for remission of up to three years of taxes, interest, and penalties prior to the application year. (Appellant's Brief at 7.)

{¶ 22} We disagree with the BOE's argument that the reference in R.C. 5713.08(C) to when the property "was first used for the exempt purpose" signifies that the exempt use must continue into the application year. HTH asserted in its application that the property had been used for the exempt purpose of a house of worship since 2013. Whether or not the Tax Commissioner determined that use of the property for "the exempt purpose" continued into tax year 2019 is immaterial to the fact that the property "was first used for the exempt purpose" in 2013. To accept the BOE's argument, we would have to insert additional words into the statutes, which we may not do. *See Roe v. Planned Parenthood Southwest Ohio Region*, 2009-Ohio-2973, ¶ 42, citing *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419 (1999). Instead, we must give effect to the words used by the General Assembly. *Id.*

{¶ 23} Neither *Cleveland v. Limbach*, 40 Ohio St.3d 295 (1988), nor *Toledo v. Levin*, 2008-Ohio-1119, supports the BOE's position. In *Limbach*, the court stated, "Under R.C. 5715.27, an application [for exemption] must be filed with the commissioner prior to December 31 of the tax year for which exemption is requested if the property is to be exempted for taxation." *Limbach* at 296. That is an accurate restatement of R.C. 5715.27(F). At issue in *Limbach* was the requirement that an applicant attach to an application for exemption a certification from the county treasurer that "the taxes have been paid to the date upon which the application is filed, except for taxes that may be remitted." *Id.* at 296, quoting R.C. 5713.08(A).

{¶ 24} The application in *Limbach*, filed July 1, 1983, sought tax exemption for tax year 1983 and remission of taxes, interest, and penalties from January 27, 1982, when the city of Cleveland purchased the subject property. With its application, the city filed a certification from the Cuyahoga County Treasurer that taxes had been paid through the January 27, 1982 date of sale, but also stating that $24,544.85 remained as unpaid taxes, penalties, and interest for tax year 1982. The question became whether the unpaid taxes were remittable. The Supreme Court held that, because the unpaid taxes for tax year 1982 became a lien on the property on January 1, 1982, before the city purchased the property and before the property was first used for the exempt purpose, they were not remittable. Therefore, the Tax Commissioner lacked jurisdiction under R.C. 5713.08(A) to consider the exemption application because there remained unpaid, unremittable taxes as of the application date. The issue that HTH raises here was not before the court in *Limbach*, and nothing in the *Limbach* decision suggests that the Tax Commissioner's authority to remit taxes for tax year 1982 was dependent upon the city's entitlement to exemption for tax year 1983.

{¶ 25} *Levin* likewise did not involve the issue presented here. In *Levin*, the Supreme Court determined that R.C. 5715.27(F) is unambiguous and that, as used in the statute, "tax year" means "the year as to which real property is valued and in which the tax is levied and assessed." *Levin*, at ¶ 14. The city of Toledo's application for exempt status for tax year 2002 was untimely under R.C. 5715.27(F), as it was not filed until March 2003, but the Supreme Court held that the BTA erred by determining that the Tax Commissioner lacked jurisdiction to consider the application as an application for tax year 2003 instead. HTH cites a footnote in *Levin*, which states, "It is important to reiterate that the Tax Commissioner, after granting exemption for the 2003 year, remitted taxes back to 2000. That is consistent with the theory presented on the face of the application that the exempt use was in place from 1994 through the filing of the application." *Id.* at ¶ 22, fn. 2. The footnote, however, simply explained Toledo's argument that the county treasurer's certification demonstrated that all unremittable taxes had been paid when the application was filed.

{¶ 26} HTH fares no better with its citation to the BTA's decision in *Zion Evangelical Lutheran Church v. Zaino*, BTA No. 2003-A-876, 2004 Ohio Tax LEXIS 212 (Feb. 6, 2004). Zion Evangelical Lutheran Church originally filed an application for exemption for tax year 1999 and remission for tax years 1996, 1997, and 1998. The Tax Commissioner granted exemption for 1999 but did not address the request for remission. Rather than timely requesting reconsideration or timely appealing to the BTA, Zion filed a new application in December 2000, requesting only remission for tax years 1996, 1997, and 1998. The Tax Commissioner dismissed the new application for lack of jurisdiction, and the BTA affirmed the Tax Commissioner's decision. The BTA held that the only means by which to seek remission of taxes is through an application for exemption filed by

December 31 of the year for which exemption is sought. It stated, "[t]he decision whether to remit taxes for previous tax years is based upon the initial determination of exemption for the property in question." *Id.* at *7. Zion's December 2000 application did not place before the Tax Commissioner a request for exemption for tax year 2000, because the Tax Commissioner had already found the property exempt. Thus, "there was no means [for the Tax Commissioner] to get beyond the exemption issue to render a determination regarding the remission requests." *Id.* In contrast, here, HTH filed a timely application for exemption for tax year 2019, which required a determination by the Tax Commissioner. The Tax Commissioner determined the properly submitted exemption request; that it decided exemption was not warranted for tax year 2019 did not strip it of the authority to "get beyond the exemption issue" to the remission requests.

{¶ 27} As additional support for its argument that the Tax Commissioner lacked authority to grant remission for tax years 2016 and 2017 while denying exemption for tax year 2019, the BOE points to R.C. 5715.27(H), which it argues provides the sole circumstance in which the Tax Commissioner may separately consider exempt status for the application year and remission for prior years. R.C. 5715.27(H) applies when there has been a change in circumstances while an application for exemption is pending, and it allows the Tax Commissioner to make separate determinations for each year in which the application remains pending and for which remission was sought. It does not, however, state that it provides the exclusive authority for the Tax Commissioner to consider tax years separately. The import of R.C. 5715.27(H) is to afford the Tax Commissioner authority to consider changes that occur after the application is filed and that may affect the exempt status of the property *going forward* from the application year. Whereas the Tax Commissioner would normally only determine exemption as of the application year before

considering remission for prior years, R.C. 5715.27(H) authorizes the Tax Commissioner to also separately determine exempt status for "each subsequent tax year during which the application . . . is pending before the commissioner[.]" R.C. 5715.27(H) does not limit the Tax Commissioner's authority to separately consider remission to circumstances in which there has been a post-application change in circumstances.

{¶ 28} HTH filed a timely application for exemption for tax year 2019, and HTH presented testimony supporting its position that the property was used for an exempt purpose in tax year 2019 and that the exempt use had begun prior to tax year 2016. The application was timely "filed" by the end of the tax year for which exemption was "sought." R.C. 5715.25(F). As it was entitled to do under R.C. 5713.081(A), HTH requested in its timely application remission of taxes, interest, and penalties for not more than three tax years preceding the application year. Nothing in R.C. 5715.25, 5713.08, or 5713.081 requires an applicant to prevail on the request for exemption in the tax year during which the application was filed to activate the Tax Commissioner's discretionary authority to consider the request for remission. For the foregoing reasons, we overrule assignments of error one, two, and three.

### E. Assignments of error four and five

{¶ 29} The BTA stated, "The parties generally agree that this appeal turns on an analysis of R.C. 5715.27 and R.C. 5713.081." (BTA Decision & Order at 3.) Under its fourth and fifth assignments of error, the BOE argues that the BTA's decision violates established rules of statutory interpretation and, more specifically, that the BTA erred by not reading the relevant statutes in pari materia, by creating conflict between statutes, and by rendering certain statutory provisions meaningless. We disagree.

{¶ 30} To the extent the BOE argues that the BTA erred by failing to read R.C. 5715.27, 5713.08, and 5713.081 in pari materia, that argument is misplaced. The doctrine of in pari materia requires that statutes relating to the same subject matter be construed harmoniously to give force and effect to each, if possible. *Snodgrass v. Harris*, 2024-Ohio-3130, ¶ 17. " 'The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists.' " (Emphasis in original.) *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2014-Ohio-5511, ¶ 22, quoting *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995). When the language of a statute is not ambiguous, however, "it is inappropriate to use the in pari materia rule of statutory construction." *In re Application for Correction of Birth Record of Adelaide*, 2024-Ohio-5393, ¶ 41. Instead, we must apply plain and unambiguous statutory as written. *Hulsmeyer* at ¶ 23. Because the BOE has identified no ambiguity in the relevant statutes regarding applications for exemption and remission, and because we find no ambiguity in those statutes, we must apply the statutes as written, without resort to canons of statutory interpretation, including the in pari materia rule.

{¶ 31} In any event, contrary to the BOE's claim that the BTA placed primary emphasis on R.C. 5713.081(A) and rendered R.C. 5715.27(F) and (H) meaningless, we conclude that the BTA gave both R.C. 5715.27 and 5713.081 reasonable constructions based on the plain, unambiguous statutory language, giving force and effect to each statute. The BTA acknowledged the binding precedent prohibiting it from imposing jurisdictional impediments to review that are not contained in the statutory text. *See Life Path Partners, Ltd. v. Cuyahoga Cty. Bd. of Revision*, 2018-Ohio-230; *Equity Dublin Assocs. v. Testa.* 2014-Ohio-5243. As there is no statutory language to require exemption in the application year before the Tax Commissioner may consider remission for the three-year lookback

period, the BTA properly held that the BOE's reading of the statutes would improperly limit the Tax Commissioner's discretion in a way not clearly found in R.C. 5713.081. R.C. 5715.27(F)'s requirement that applications for exemption be filed by December 31 of the year for which exemption is sought does not conflict with R.C. 5713.081's acknowledgment that an application for exemption—timely filed during the year for which exemption is sought—may also seek remission reaching back three years. And as discussed above, R.C. 5715.27(H), which authorizes the Tax Commissioner to separately determine exempt status for "each subsequent tax year during which the application . . . is pending before the commissioner" following a post-application charge in circumstances does not conflict with the Tax Commissioner's statutory authority to consider remission for the three preceding years, regardless of the Tax Commissioner's determination of exemption for the application year.

{¶ 32} Finding no error in the BTA's review of the relevant statutes, we overrule the BOE's fourth and fifth assignments of error.

### F. Assignment of error six

{¶ 33} Finally, in its sixth assignment of error, the BOE argues that the BTA improperly relied on evidence regarding tax year 2019 when the BOE appealed only the Tax Commissioner's decision ordering remission for tax years 2016 and 2017. The BOE points to the BTA's statement that its "review is . . . limited to [tax years 2016 and 2017,] but [its] review must encompass the full record." (BTA Decision & Order at 5.) While the BOE contends it was "legally improper for the BTA to consider evidence for tax year 2019," it does not identify any evidence regarding tax year 2019 that the BTA relied on its decision, nor does the BOE offer any indication how the BTA's consideration of such evidence affected its decision. The BTA's decision regarding tax years 2016 and 2017 hinged on its

rejection of the legal argument that the Tax Commissioner lacked authority to consider remission for tax years 2016, 2017, and 2018 after determining that exemption was unwarranted for tax year 2019. That determination was a question of law involving the meaning and application of statutory language, and it did not depend on any evidence regarding tax year 2019. *See Equity Dublin Assocs.* at ¶ 22 ("how the exemption statutes, properly construed, apply to [the undisputed facts] presents . . . a question of law"). We accordingly conclude that the BOE has not demonstrated error based on the BOE's supposed consideration of evidence regarding tax year 2019, and we overrule the BOE's sixth assignment of error.

## III. CONCLUSION

{¶ 34} Having overruled each of the BOE's six assignments of error, we affirm the BTA's decision and order.

*Judgment affirmed.*

MENTEL and DINGUS, JJ., concur.